| | |
|---|---|
| WINDELS MARX LANE & MITTENDORF, LLP<br>156 West 56th Street<br>New York, New York 10019<br>Telephone (212) 237-1000<br>Facsimile (212) 262-1215<br><br>Attorneys Appearing:<br>Alan Nisselson (anisselson@windelsmarx.com)<br>John J. Tepedino (jtepedino@windelsmarx.com)<br>Serena M. Parker (sparker@windelsmarx.com)<br><br>*Attorneys for Alan Nisselson, Trustee, Plaintiff* | Hearing Date: March 11, 2014 @ 10:00 a.m.<br>Defendants' Brief in Opposition Due:<br>February 10, 2014 @ 5:00 p.m. |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>BIG APPLE VOLKSWAGEN, LLC,<br><br>                           Debtor. | Chapter 11<br><br>Case No. 11-11388 (JMP) |
| ALAN NISSELSON, Chapter 11 Trustee of<br>BIG APPLE VOLKSWAGEN, LLC,<br><br>                           Plaintiff,<br><br>-against-<br><br>RATIBA SALIM and WAHID SALEEM,<br><br>                           Defendants. | Adv. Proc. No. 11-2251 (JMP) |

**AFFIDAVIT OF ALAN NISSELSON IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

STATE OF NEW YORK    )
                                  ) ss.:
COUNTY OF NEW YORK  )

    I, Alan Nisselson, hereby depose and state as follows:

{10921600:2}

1.  I am the trustee ("Trustee" or "Plaintiff") for the chapter 7 estate of Big Apple Volkswagen, LLC ("Big Apple" or the "Debtor") and Plaintiff in the above-captioned adversary proceeding.

2.  I submit this affidavit in support of Plaintiff's motion for partial summary judgment on Plaintiff's first claim for recovery of pre-petition preferential and subsequent transfers against Defendant Ratiba Salim and Defendant Wahid Saleem as further described below. The facts set forth herein are based upon my personal knowledge of the official Court records of this case and related cases, documents produced in discovery and testimony obtained through depositions.

3.  As set forth below and more fully in the accompanying Memorandum of Law and the Local Bankruptcy Rule 7056-1 Statement ("Rule 7056-1 Statement"), the Trustee is entitled to partial summary judgment (1) determining that the transfers to Defendant Ratiba Salim were preferential as a matter of law; (2) avoiding and preserving the transfers to Defendant Ratiba Salim; (3) directing that such transfers be set aside and recovering the transfers, or the value thereof, from Defendant Ratiba Salim for the benefit of the Debtor's estate; and (4) avoiding and recovering the subsequent transfer to Defendant Wahid Saleem as a subsequent transferee of a property transferred to him by Defendant Ratiba Salim.

### Voluntary Petition and Appointment of Trustee

4.  On March 30, 2011, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code. 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the

{10921600:2}

"Bankruptcy Court"). Attached hereto as **Exhibit A** is a true and correct copy of the Debtor's Voluntary Petition for Relief under Chapter 11 (ECF. Doc. No. 1).[1]

5.  By Order dated May 12, 2011, the Court approved my appointment as trustee for the Chapter 11 estate. Attached hereto as **Exhibit B** is a true and correct copy of the Order Approving my Appointment of Chapter 11 Trustee (ECF. Doc. No. 61).

6.  Upon the motion of the Chapter 11 Trustee and by Order dated December 21, 2011 (the "Conversion Date"), the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. Attached hereto as **Exhibit C** is a true and correct copy of the Order Converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code and Granting Other Related Relief (ECF Doc. No. 147). Thereafter, the Trustee was appointed interim Chapter 7 trustee and is now qualified and serving as permanent trustee.

### Background of Debtor's Business

7.  Big Apple owned and operated a Volkswagen automobile dealership and repair business pursuant to a franchise agreement by and between Big Apple and Volkswagen of America, Inc., the manufacturer. See Motion of Chapter 11 Debtor-in-Possession for Order Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 (c)(2)(B) and Related Relief, annexed hereto as **Exhibit D** (ECF. Doc. No. 2) at ¶ 5.

---

[1] Citations to "ECF Doc. No. __" or to "Adv. Proc. Doc. No." refer to the location that the referenced document can be found on the Court's electronic case filing dockets for this case and adversary proceeding, respectively.

{10921600:2}    3

8.      Julian Salim was the Managing Member and 54% equity owner of the Debtor and Grzegorz Samborski. Jr. was the holder of the other 46% membership interest in the Debtor. See Exhibit A at p. 9.

**The Debtor's Bankruptcy Filing is Precipitated by the VCI District Court Action**

9.      Prior to the Petition Date, on March 21, 2011, VW Credit, Inc. ("VCI") commenced an action (the "VCI District Court Action") in the United States District Court for the Southern District of New York (the "District Court") against the Debtor, Julian Salim, Grzegorz Samborski and John Koeppel (collectively, the "VCI Defendants") (District Court Case No. 11-cv. 1950). A true and correct copy of the VCI Complaint with attachments (the "VCI Complaint") is annexed hereto as **Exhibit E** (VCI Doc. No. 1) [2]

10.     VCI extended wholesale financing to the Debtor for its purchase of automobiles to be held as inventory by the Debtor for resale or lease at retail, which indebtedness was secured by the Debtor's grant to VCI of a security interest in essentially all of the Debtor's assets (collectively, the "Collateral"), which security interest was alleged to have attached, been duly perfected and to constitute a first priority security interest in and to the Collateral. See Exhibit E at ¶¶ 9-42 (and attaching the relevant agreements and VCI's file-stamped, UCC-1 Financing Statement dated July 1, 2006).

11.     The VCI Complaint further alleged, *inter alia*, claims for breach of contract and and replevin of the Collateral against the VCI Defendants in connection with allegations that, in violation of the terms and conditions of a Wholesale Loan Agreement, the Debtor sold seventy eight (78) vehicles from its inventory and failed and refused to remit payment therefore to VCI as required, in the amount of $1,237,615.86 plus accrued interest, costs and fees. See Exhibit E

---

[2] Citations to "VCI Doc. No. __" refer to the location that the referenced document can be found on the Court's electronic case filing docket for the VCI District Court Action.

{10921600:2}                                    4

at ¶ 19. The VCI Complaint further sought payment of the entire unpaid balance and accrued interest due under the loans in question in the amount of $3,942,323.29. See Exhibit E at ¶ 40.

12. On March 22, 2011, the District Court entered an order in the VCI District Court Action restraining and prohibiting the Debtor from conducting any business or paying any of its employees, pending a hearing for a Temporary Restraining Order on April 1, 2011. See Exhibit A at p. 10.

13. On information and belief, in order to prevent the seizure of the Debtor's assets through the automatic stay, the Debtor filed its petition for Chapter 11 relief on March 30, 2011. See Exhibit A at p. 10.

### The Adversary Proceeding

14. On June 14, 2011, I filed an adversary proceeding (the "Adversary Proceeding") seeking to avoid and recover (i) as fraudulent and preferential, the pre-petition transfer by Julian Salim of at least $718,000.00 from the Debtor's estate to Defendant Ratiba Salim, the mother of Julian Salim, and (ii) her subsequent transfer to Defendant Wahid Saleem, the father of Julian Salim, of her primary residence at 8529 65th Road, Rego Park, NY 11374 (the "Premises") which was freed of a mortgage through the use of the Debtor's funds. The Adversary Proceeding was brought pursuant to sections 105, 544(b), 547(b), 548(a) and 550(a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270 et seq. (McKinney 2001) "DCL")). A true and correct copy of the complaint in the Adversary Proceeding (the "Adversary Complaint") is annexed hereto as **Exhibit F** (Adv. Pro. Doc. No.1).

15. The Complaint further alleged that on March 15, 2011, the very next day after making the aforementioned transfer of $718,000.00 in Debtor funds to his mother, Julian Salim

{10921600:2}    5

transferred a further $504,271.14 from the Debtor's bank account to his brother-in-law in Syria. See Exhibit F at ¶ 16.

16. I also moved for, and the Bankruptcy Court issued: (i) an ex parte order of attachment against the Premises pending judgment or other disposition of the Adversary Proceeding; and (ii) an order confirming the order of attachment. On September 15, 2011, the Bankruptcy Court entered an Order confirming the attachment. A true and correct copy of the Order Confirming Attachment is annexed hereto as **Exhibit G** (Adv. Pro. Doc. No. 11).

### The Transfer to Defendant Ratiba Salim is Not In Dispute

17. Defendant Ratiba Salim is the mother of Julian Salim, the Managing Member and 54% equity owner of the Debtor. See Ex. A at p. 9; Transcript of the May 3, 2011 Hearing on the Motion to Appoint a Chapter 11 Trustee, a true and correct copy of which is annexed hereto as **Exhibit H** (ECF. Doc. No. 67) at pp. 7-15.

18. In the Adversary Complaint, I alleged that on March 14, 2011, Julian Salim withdrew $718,000 from the Debtor's Wachovia commercial checking account and transferred the funds to his mother, Defendant Ratiba Salim (the "Transfer"). See Exhibit F at pp. 3-4

19. The Complaint attached a copy of the Debtor's March 2011 bank account statement reflecting such Transfer. See Exhibit F.

20. The occurrence of the Transfer is not in dispute.

21. Prior to the Adversary Proceeding, in connection with a motion by VCI to appoint a Chapter 11 Trustee due to concerns regarding the Debtor's noncompliance with its disclosure obligations as a Debtor-in Possession, the Debtor appeared at a hearing held before the Bankruptcy Court to consider the motion (the "Hearing").

{10921600:2}    6

22.     At the Hearing, the Debtor stated through counsel that "the facts of the payment to Mrs. Salim … are not controverted." See Exhibit H at p. 15:

23.     The Debtor described the Transfer of $718,000 as being made by Julian Salim to Defendant Ratiba Salim in satisfaction of an unsecured loan made by Defendant Ratiba Salim to the dealership and acknowledged that a transfer of $781,000 listed under "Payment to Creditors" in the Debtor's Statement of Financial Affairs (which was only disclosed one day before the Hearing and several months after the Petition Date) referred to the same payment. See Exhibit G at pp. 7-15; see also the Debtor's Statement of Financial Affairs at p.2, a true and correct copy of which is annexed hereto as **Exhibit I** (ECF. Doc. No. 55). No evidence of an unsecured loan from Defendant Ratiba Salim appeared in the Debtor's financial statements. See Exhibit H at 7.

24.     Notably, neither the Transfer, nor Julian Salim's second transfer, made one day later, of $504,271.14 from the Debtor's Wachovia commercial checking account to his brother-in-law in Syria and described as "an investment" (the "Second Transfer") were initially disclosed in the Debtor's financial statements or bankruptcy filings. See Exhibit H at pp. 7-15. The Second Transfer is not at issue in the Adversary Proceeding.

25.     It was further noted at the Hearing that the total amount of the Transfer and Second Transfer, approximately $1.2 million dollars, was "remarkably close" to the approximately $1.2 million dollars that the Debtor generated through the sale of the seventy eight vehicles from its inventory which it refused to remit to VCI as required, leading to the conclusion that the intention of the sales "was to fund these two projects." Id. at p.14.

{10921600:2}                                                            7

**Discovery Elucidates The Facts of Certain Transfers to Defendant Ratiba Salim**

26.    Discovery taken in this matter, including an examination of the Debtor's records, documents produced by the Defendants and deposition testimony confirmed the following facts regarding certain transfers to Defendant Ratiba Salim:

**The $495,000 Transfer**

27.    In my capacity as Trustee, I am in possession of the Debtor's books and records, including bank statements.

28.    On March 14, 2011, a $718,000 "counter withdrawal" was withdrawn from the Debtor's Wachovia Commercial Checking Funding Account.  See March 1-March 31, 2011 Wachovia Commercial Checking Funding Account ending in 7695 and listing Big Apple Volkswagen, LLC as Account Owner, a true and correct copy of which is annexed hereto as **Exhibit J** at p.5 (the "Funding Account").

29.    On the same day, March 14, 2011, a $718,000 "Counter Deposit" was made to the Debtor's Wachovia Commercial Checking - Wholesale "Slush" Account.  See September 27, 2010 - March 21, 2011 Wachovia Commercial Checking-Wholesale Slush Account ending in 8157 and listing Big Apple Volkswagen as an Account Owner, a true and correct copy of which is annexed hereto as **Exhibit K** at p.1 (the "Slush Account").

30.    Thereafter, a record provided by Defendants in this matter reflects that on March 16, 2011, Julian Salim requested that a wire transfer of $495,000 be made from the Debtor's Slush Account ending in 8157 to Defendant Ratiba Salim's Queens County Savings Bank Account ending in 337.  See March 16, 2011 Wire Transfer Services Outgoing Wire Transfer Request, a true and correct copy of which is annexed hereto as **Exhibit L**.

31.     On the same day, March 16, 2011, Defendant Ratiba Salim's Queens County Savings Bank Account Statement, also provided by Defendants, reflects a "Fedwire" credit in the amount of $495,000 showing the originator of the funds as "Big Apple Volkswagen." See March 25, 2011 Queens County Savings Bank Account Statement of Ratiba Salim, annexed hereto as **Exhibit M**.

32.     Non-Party Witness Julian Salim confirmed his signature on the March 16, 2011 Wire Transfer Services Outgoing Wire Transfer Request authorizing the transfer of $495,000 to Defendant Ratiba Salim. See Excerpts from the October 4, 2013 Deposition of Julian Salim, a true and correct copy of which is annexed hereto as **Exhibit N** at p. 47-48.

33.     Non-party Witness Julian Salim recalled generally that a transfer of funds from the Debtor's accounts was made to Defendant Ratiba Salim on or about March 2011 and about two weeks prior to the Debtor's Petition Date. See Exhibit N at 42-44. 47-48.

**The $210,000 Transfer**

34.     On March 16, 2011, the Debtor's Slush Account also reflects a "Counter Withdrawal" of $210,000. See Exhibit K at 1.

35.     A "Withdrawal" slip obtained from Wells Fargo Bank indicates that on March 16, 2011, a withdrawal of $210,000 was made by Julian Salim, on information and belief, for the benefit of Ratiba Salim, from the Debtor's Wells Fargo account ending in 8157, on information and belief the same account as the Slush Account.[3] See March 16, 2011 Withdrawal Slip, a true and correct copy of which is annexed hereto as **Exhibit O**.

36.     In addition, Defendants produced to the Trustee a "Purchaser Copy" of a Cashier's Check dated March 16, 2011 marked "Pay to the Order of Ratiba Salim" in the amount

---

[3] On information and belief, starting in 2009, the Wachovia brand was absorbed into the Wells Fargo brand in a process that lasted three years

{10921600:2}                    9

of $210,000 drawn on the Debtor's Wells Fargo account ending in 8157. See March 16, 2011 Cashier's Check, a true and correct copy of which is annexed hereto as **Exhibit P**.

37. On the same day, March 16, 2011, Defendant Ratiba Salim's Queens County Savings Bank reflected a deposit and credit of $210,000. See Exhibit M.

38. Based on the foregoing, at least $705,000 of the Debtor's funds were transferred to Defendant Ratiba Salim.

39. Although Defendant Ratiba Salim's Queens County Savings Bank Account Statement reflects other large and significant transfers, see Exhibit M, the Trustee's current records presently establish that the amounts described above can be traced to the Debtor's accounts.

40. Notably, the beginning balance for Defendant Ratiba Salim's Queens County Savings Bank Account was $1,183.79 and the ending balance was $184,753.38. See Exhibit M.

41. Defendant Ratiba Salim testified that she has no income other than "$200.00 a month that my son brings me." See Excerpts from the August 22, 2013 Deposition Testimony of Ratiba Salim, a true and correct copy of which is annexed hereto **Exhibit Q** at p. 27.

42. Non-Party Witness Julian Salim also testified that "my mother has never worked." See Exhibit N at 88.

**By Admission of Both Defendant and the Debtor, The Transfers Were Made to Defendant Ratiba Salim As a Creditor and in Payment of An Antecedent Debt**

43. Defendants' document production in this matter included a copy of a document entitled "Letter Agreement between Big Apple VW, LLC Julian Salim and Ratiba Salim effective June 1, 2006 (the "Letter Agreement"). A true and correct copy of the Letter Agreement is annexed hereto as **Exhibit R**.

{10921600:2}                                     10

44. Pursuant to the Letter Agreement, "Julian Salim and Big Apple Volkswagen borrowed a total sum of $300,000 to invest in purchasing Big Apple VW, LLC." See id.

45. The Letter Agreement provided that Julian Salim and the Debtor would pay Defendant Ratiba Salim the sum of $75,000 annually on each of June 1, 2007, June 1, 2008, June 1, 2009, June 1, 2010 and March 1, 1011, for a total of $375,000 in "yearly profit" (the "Yearly Profit Payments") "as promised as a share to Ratiba Salim for giving Julian Salim and Big Apple VW the loan." See id.

46. The Letter Agreement further provided that the Yearly Profit Payments of $375,000 were not intended to include the $300,000 amount due under the loan, which would be repaid to Defendant Ratiba Salim in full on or before April 1, 2011. See id.

47. The Letter Agreement further provided that if no payments were made to Defendant Ratiba Salim during the term of the five year loan period, the Yearly Profit Payments would be paid in one sum in the amount of $375,000 plus the $300,000 principal loan payment on or before April 1, 2011. See id.

48. The payments made to Defendant Ratiba Salim were identified on the list of "Payments to Creditor" in the Debtor's Statement of Financial Affairs. See Exhibit I at p. 2.

49. Non-Party Witness Julian Salim testified that Defendant Ratiba Salim took out a mortgage on the Premises in order to provide a loan of $300,000 to Julian Salim and the Debtor. See Exhibit N at pp. 25-27.

50. Defendant Ratiba Salim verified her signature on the Letter Agreement. See Exhibit Q at p.17.

51. Non-Party Witness Julian Salim verified his signature on the Letter Agreement. See Exhibit N at p.33.

52. Defendant Ratiba Salim admitted that she took out a mortgage on the Premises in order to facilitate a loan to Julian Salim. See Exhibit Q at p. 16-20.

53. Non-Party Witness Julian Salim confirmed that the Yearly Profit Payments were never made to Ratiba Salim because "[w]e didn't keep our promise to her." Exhibit N at p.34.

54. Non-Party Witness Julian Salim further testified that the payments to Ratiba Salim were made in March 2011 because "it was approaching the five-year agreement that we had with her." See Exhibit N at p.96.

55. Non-Party Witness Grzegorz Samborski also testified that he recalled that transfers were made from the Debtor's accounts in March 2011 of approximately $718,000 to Ratiba Salim and that these transfers were made to payoff "the money that she loaned to start the business." See Excerpts from the October 10, 2013 Deposition Transcript of Grzegorz Samborski, a true and correct copy of which is annexed hereto as **Exhibit S** at p.29.

**The Loan Made By Ratiba Salim Was Not Secured**

56. The Letter Agreement did not grant or purport to grant Defendant Ratiba Salim a security interest in any of the Debtor's property. See Exhibit R.

57. Defendants have only produced a copy of a New York UCC-1 Filing Statement (Form UCC-1) in support of Ratiba Salim's alleged status as a secured creditor, a true and correct copy of which is annexed hereto as **Exhibit T**.

58. Notably, the New York UCC-1 Filing Statement shows an initial Filing Date of January 28, 2008, nearly two years after the alleged loan. See Exhibit T.

59. Defendants have not produced a security agreement, or any other document, that could be construed to, to provide Defendant Ratiba Salim an attached security interest in the Debtor's collateral.

60. Defendant Ratiba Salim was not identified as secured creditor in the Debtor's schedules. See Exhibit A at Schedule D.

### The Transfers Enabled Defendant Ratiba Salim to Receive More Than She Would Have Received Through a Hypothetical Chapter 7 Liquidation

61. Subsequent to the Petition Date, I, along with my counsel and accountants, conducted an extensive investigation and analysis of VCI's alleged pre-petition claims against the Debtor as set forth more fully above and in the VCI Complaint, and the validity, extent and priority of VCI's alleged security interest in the Debtor's assets.

62. As a result, I concluded that VCI holds valid claims secured by a valid and perfected first priority lien on the Debtor's assets, as set forth in further detail in the Stipulation and Order Allowing Claims and Liens of Volkswagen Credit, Inc. and Granting Such Other and Further Relief entered on December 20, 2011, a true and correct copy of which is annexed hereto as **Exhibit U** (ECF. Doc. No. 146).

63. Thirty six (36) proofs of claim have been filed.

64. Certain of the claims were amended or are duplicative of previously filed claims

65. I believe that the outstanding claims total approximately $3.608 million and are comprised of: (i) unpaid Chapter 7 administrative expenses of $222,075.87; (ii) the Amended secured claim of VCI in the amount of $1,146,506.96; (iii) chapter 11 administrative claims of $147,701.64 including the unpaid balance of the fees and expenses of the Chapter 11 Trustee and retained professionals; (iii) priority claims filed by former employees under Bankruptcy Code § 507(a)(4) of $12,960.00; (iv) priority claims filed by taxing authorities under Bankruptcy Code § 507(a)(8) of $40,267.72; and (v) general unsecured claims of $1,499,081.81.

66. As a result of the foregoing, unsecured creditors are not expected to receive a 100% dividend in the Debtor's case, because, after administrative expenses, the balance of the

{10921600:2}                                13

estate remains subject to the secured claim of VCI.  The amount currently owed to VCI is $1,146,506.96, and currently exceeds the Debtor's assets.

### Defendant Ratiba Salim Utilized $335,000 of the Debtor's Funds to Satisfy the Mortgage on the Premises

67. On March 23, 2011, Defendant Ratiba Salim satisfied a $300,000 mortgage on the Premises.  See Satisfaction of Mortgage, a true and correct copy of which is annexed hereto as **Exhibit V**.

68. Defendant Ratiba Salim's Queens County Savings Bank Account Statement reflects payment for the Satisfaction of Mortgage, showing a March 17, 2011 "Fedwire Out" of $335,000 for "Beneficiary Ratiba Salim" to the attention of the 'Payoff Department" in connection with 8529 65th Road, Rego Park, NY 11374.  See Exhibit M; see also Exhibit U (reflecting 8529 65th Road, Rego Park, NY 11374 as the subject property pursuant to which the mortgage was satisfied).

69. Non-Party Witness Julian Salim confirmed that the money that was used to satisfy the mortgage on the Premises by Defendant Ratiba Salim was the money that she received from Big Apple Volkswagen, and that mortgage was not satisfied by any money that she previously had herself.  See Exhibit N at p.75.

### Defendant Ratiba Salim Transferred The Premises to Defendant Wahid Saleem for Ten Dollars in Consideration

70. On May 5, 2011, Defendant transferred title to the Premises to her husband, Defendant Wahid Saleem, residing at the same address, allegedly for ten dollars in consideration (the "Subsequent Transfer").  See Deed dated May 5, 2011, a true and correct copy of which is annexed hereto as **Exhibit W**.

71. Although the Deed recites that the Defendant Wahid Salim provided ten dollars in consideration for the transfer, no substantiation of the consideration exchanged has been provided to the Trustee, despite Plaintiff's document request seeking "[a]ll Dcuments concerning the transfer of title to the real property located at 8529 65th Road, Rego Park, New York 11374 from Defendant Ratiba Salim to Defendant Wahid Saleem." See Plaintiff's First Requests for Production of Documents, a true and correct copy of which is annexed hereto as **Exhibit Y**.

72. Defendant Ratiba Salim testified that the Subsequent Transfer was made because "[h]e was the one who bought the house" and she "didn't want anything under my name." See Exhibit P at 42-43.

73. Defendant Wahid Saleem further testified that Defendants had a long-term plan to transfer the Premises to Defendant Wahid Salim, but were prevented from doing so until the mortgage in Defendant Ratiba Salim's name was satisfied. See Excerpts from the August 22, 2013 Deposition of Wahid Salim, a true and correct copy of which is annexed hereto as **Exhibit X** at 23.

74. However, Defendant Wahid Salim should be deemed to have knowledge of the avoidance of the transfer, given that two days prior to the Subsequent Transfer, on May 3, 2011, Julian Salim attended the Hearing on the Motion to Appoint a Chapter 11 Trustee at which the Court ordered the appointment of a Chapter 11 Trustee based on Julian Salim's "clearly inappropriate transactions" and the Debtor's counsel openly contemplated whether the pre-petition transfers made by Mr. Salim were preferential or fraudulent. See Exhibit H at pp. 20, 26.

>/s/ Alan Nisselson
>Alan Nisselson

Sworn to before me this
27th day of January 2014

/s/ Maritza Segarra
Maritza Segarra
Notary Public, State of New York
No. 03-4652865
Qualified in Westchester County
Commission Expires December 31, 2015

{10921600:2}    16