*Attorneys for Alan Nisselson, Trustee, Plaintiff*
156 West 56th Street
New York, New York 10019
Telephone:     (212) 237-1000
Facsimile:     (212) 262-1215

Attorneys appearing:  Alan Nisselson (anisselson@windelsmarx.com)
                      Serena M. Parker (sparker@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | Chapter 7 |
| BIG APPLE VOLKSWAGEN, LLC, | |
| | Case No.  11-11388 (JMP) |
| Debtor. | |
| ALAN NISSELSON, Chapter 7 Trustee of BIG APPLE VOLKSWAGEN, LLC, | Adv. Proc. No. 11-2251 (JMP) |
| Plaintiff, | |
| -against- | |
| RATIBA SALIM and WAHID SALEEM, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

**WINDELS MARX LANE & MITTENDORF, LLP**
**156 West 56th Street**
**New York, New York 10019**
**Telephone (212) 237-1000**
***Attorneys for Alan Nisselson, Trustee and Plaintiff***

{10923592:3}

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

ARGUMENT .........................................................................................................................3

I.   SUMMARY JUDGMENT STANDARD ...........................................................................3

II.  THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON HIS
     FIRST CLAIM FOR RELIEF FOR AVOIDANCE AND RECOVERY OF
     PREFERENTIAL TRANSFERS AS A MATTER OF LAW...........................................5

   A.   The Plaintiff's Prima Facie Case is Satisfied Under Bankruptcy Code Section 547 ......5

      (1)   The Transfers Constitute an Interest of the Debtor in Property .............................6

      (2)   The Transfers were to or for the Benefit of a Creditor..........................................9

      (3)   The Transfers Were Made On Account of An Antecedent Debt Owed By the
            Debtor Before Such Transfer Was Made ..............................................................10

      (4)   Made while Debtor Was Insolvent ......................................................................11

      (5)   The Transfers Were Made During the Preference Period ....................................12

      (6)   The Transfers Enabled Defendant Ratiba Salim to Receive More Than She Would
            Have Received Through a Hypothetical Chapter 7 Liquidation ..........................12

IV.  TO THE EXTENT THAT THE TRANSFERS TO DEFENDANT RATIBA SALIM
     ARE AVOIDED, THE SUBSEQUENT TRANSFER TO DEFENDANT WAHID
     SALIM IS ALSO RECOVERABLE BY THE TRUSTEE PURSUANT TO 11 U.S.C. §
     550(a)...............................................................................................................................14

V.   Conclusion .......................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abramson v. Pataki,
278 F.3d 93 (2d Cir. 2002) ..................................................................................4

Anderson v. Liberty Lobby,
477 U.S 242, 106 S. Ct. 2505 (1986) ...................................................................4

Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Group, Inc.),
2006 U.S. Dist. LEXIS 4263 (S.D.N.Y. 2006) ...................................................6

Begier v. IRS,
496 U.S. 53 (1990) ...............................................................................................7

Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified
Prods., Inc.),
100 F.3d 53 (7th Cir. 1996) .................................................................................8

Cassirer v. Herskowitz (In re Schick),
234 B.R. 337 (Bankr. S.D.N.Y. 1999) ...........................................................5, 10

Celotex Corp. v. Catrett,
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .....................................3

Cordiano v. Metacon Gun Club,
575 F.3d 199 (2d Cir. 2009) .................................................................................4

FCC v. NextWave Pers. Comm'cns Inc.,
537 U.S. 293 (2003) ..............................................................................................9

Fonda Group v. Marcus Travel (In re Fonda Group),
108 B.R. 956 (Bankr. D.N.J. 1989) ....................................................................10

Gallagher v. Gordon,
2010 U.S. Dist. LEXIS 43260 (W.D.N.Y. May 3, 2010).....................................13

Goenaga v. March of Dimes Birth Defects Found.,
51 F.3d 14 (2d Cir. 1995) .....................................................................................4

IBT Int'l, Inc. v. Northern
(In re Int'l Admin. Servs., Inc.), 408 F.3d 689 (11th Cir. 2005)......................15, 16

In re Allou Distributors, Inc.,
379 B.R. 5 (Bankr. E.D.N.Y. 2007) ...............................................................15, 16

In re Artha Management, Inc.,
    174 B.R. 671 (Bankr. S.D.N.Y. 1994) .................................................................. 10

In re G. Survivor Corp.,
    217 B.R. 433 (Bankr. S.D.N.Y. 1998) ................................................................ 5, 6

In re G-I Holdings, Inc.,
    338 B.R. 232 (Bankr. D.N.J. 2006) ..................................................................... 15

In re Idicula,
    484 B.R. 284 (Bankr. S.D.N.Y. 2013) ................................................................... 9

In re Knippen,
    355 B.R. 710 (Bankr. N.D. Ill. 2006) .................................................................. 15

In re Modafferi,
    45 B.R. 370 (Bankr. S.D.N.Y. 1985) ................................................................... 13

In re Southmark Corp v. Grosz (In re Southmark Corp.),
    49 F.3d 1111 (5th Cir., 1995) ................................................................................ 8

In re Virginia-Carolina Financial Corp.,
    954 F.2d 193 (4th Cir.. 1992) .............................................................................. 11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. ....................................................................................... 4

McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC),
    439 B.R. 47 (Bankr. S.D.N.Y. 2010) ................................................................. 7, 8

Savage & Assocs. v. Mandl (In re Teligent Inc.),
    380 B.R. 324 (Bankr. S.D.N.Y. 2008) ................................................................ 12

Senno v. Elmsford Union Free School Dist.,
    812 F. Supp. 2d 454 (S.D.N.Y. 2011) ................................................................ 3, 4

Shron v. M & G Promo Service, Ltd.
    (In re Anthony Sicari, Inc.), 144 B.R. 656 (Bankr. S.D.N.Y. 1992) ....................... 7

Ultimore, Inc. v. Bucala (In re Bucala),
    464 B.R. 626 (Bankr. S.D.N.Y. 2012) ............................................................ 13, 14

**STATUTES**

11 U.S.C. § 544 .................................................................................................... 15

11 U.S.C. § 547 (b)(3) ......................................................................................... 11

11 U.S.C. § 547 (f) .............................................................................................. 11

11 U.S.C. § 547(g) ................................................................................................................5

11 U.S.C. § 550 ...................................................................................................................14

11 USCS §§ 101 et seq. ....................................................................................................5, 12

11 USCS §§ 701 et seq. ........................................................................................................5

§ 101 of the Bankruptcy Code ...............................................................................................6

Section 101(10) of the Bankruptcy Code ..............................................................................9

Bankruptcy Code section 541(a)(1) .......................................................................................7

Bankruptcy Code Section 547 ..........................................................................................5, 15

Sections 547 (b) of the Bankruptcy Code ......................................................................5, 6, 14

Bankruptcy Code § 547(b)(2) ..............................................................................................10

Bankruptcy Code Section 550(a) .....................................................................................5, 14

Bankruptcy Code § 550(a)(2) .........................................................................................15, 17

Bankruptcy Code Section 551provides .................................................................................6

OTHER AUTHORITIES

5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a],[c] ....................................................................15

Bankruptcy Rule 7056-1 ...............................................................................................passim

FED. R. CIV. P. 56(c) ............................................................................................................4

Rule 7056 of Federal Rules of Bankruptcy Procedure ..........................................................1

Rule 56 of the Federal Rules of Civil Procedure ...................................................................1

Alan Nisselson, ("Plaintiff" or the "Trustee"), as Trustee for the chapter 7 estate of Big

Apple Volkswagen, LLC ("Big Apple" or the "Debtor"), by his counsel, Windels Marx Lane &

Mittendorf, LLP, respectfully submits this Memorandum of Law pursuant to Rule 7056 of

Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure

support of his motion for partial summary judgment on his first claim for relief for avoidance and

recovery of preferential and subsequent transfers to Defendant Ratiba Salim and Wahid Saleem.

Plaintiff respectfully submits with this Memorandum of Law, the Affidavit of Alan Nisselson

Sworn to on January 27, 2014 ("Nisselson Aff.") and the Local Bankruptcy Rule 7056-1

Statement ("Rule 7056-1 Statement") to establish the absence of genuine disputes about the facts

material to the outcome of Plaintiff's claim, and to compel partial summary judgment thereon.

## PRELIMINARY STATEMENT

The Debtor was in the business of owning and operating a Volkswagen automobile

franchise.  By this action, the Trustee seeks to avoid and recover (1) a portion of over $1.2

million dollars in Debtor funds diverted from the Debtor's estate by Julian Salim, the former

managing member and majority owner of the Debtor, and transferred to his family members

within a 24-hour period on the eve of the Debtor's bankruptcy, and (2) the subsequent transfer by

Defendant Ratiba Salim, Julian Salim's mother, of a property freed from a mortgage utilizing

Debtor funds and under circumstances establishing that Defendant Wahid Saleem, Julian Salim's

father, did not receive the subsequent transfer in good faith.

The facts of the pre-petition transfers of the Debtors assets are undisputed as to all

material facts and constitute a classic textbook example of a preferential transfer to relatives.  On

or about March 16, 2011, Julian Salim disbursed, through wire transfer and a cashier's check,

approximately $705,000 to the Queens County Savings Bank account of Defendant Ratiba

Salim.  Although it appears that some effort was made to obfuscate the source of the funds by transferring them between different Debtor accounts, including the Debtor's "Slush" account, prior to making the transfers to Ratiba Salim, the bank records nevertheless establish a clear trail indicating that the funds originated from accounts owned by the Debtor and clearly constitute an interest of the Debtor in property.  Moreover, as set forth in the Nisselson Aff., it appears likely that the funds transferred to Defendant Ratiba Salim were generated through the unauthorized sale of seventy eight vehicles in violation of certain financing agreement of the Debtor, the controversy over which ultimately precipitated the Debtor's bankruptcy filing.

By the admission of both Defendant Ratiba Salim, as well as the Debtor, the transfers were made to Defendant Ratiba Salim as a creditor and in payment of an antecedent debt arising from a 2006 loan agreement pursuant to which Defendant Ratiba Salim is alleged to have loaned approximately $300,000 to the Debtor in connection with start-up costs for the franchise. However, no evidence of a loan from Defendant Ratiba Salim appeared in the Debtor's financial records.  And, despite making no efforts to honor the majority of the terms of repayment called for by the alleged loan agreement in the five year term of the loan, the Debtor suddenly rushed to repay Defendant Ratiba Salim in full within two weeks of its Petition Date, despite its facially defective claim that Defendant Ratiba Salim was a first priority secured creditor.

Finally, after clearly utilizing Debtor's fund to satisfy a mortgage on her primary residence, Ratiba Salim made a subsequent transfer of the value of the Debtor's funds by transferring title to the property to Defendant Wahid Saleem for ten dollars consideration, suspiciously within two days of Julian Salim's attendance at a hearing where he was chastised for "clearly inappropriate transactions," including the pre-petition transfers of the Debtor's assets to Defendant Ratiba Salim, among other issues.

For the reasons set forth in more detail below, the Trustee is entitled to partial summary judgment as to the preferential transfer to Defendant Ratiba Salim and the subsequent transfer to Defendant Wahid Saleem.

## STATEMENT OF FACTS

The Affidavit of Alan Nisselson in Support of Plaintiff's Motion for Partial Summary Judgment sworn to on January 24, 2014 and the Plaintiff's Local Bankruptcy Rule 7056-1 Statement of Undisputed Facts ("Rule 7056-1 Statement") provide a full recitation of the undisputed and material facts that support Plaintiff's request for partial summary judgment.

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, made applicable to these proceedings by Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7056, summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c)).   "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Senno v. Elmsford Union Free School Dist., 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the relevant law.  Id.

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  Celotex Corp, 477 U.S. at 322, 106 S. Ct. 2548,

91 L. Ed. 2d 265 (1986). "[It is] ordinarily sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Cordiano v. Metacon Gun Club, 575 F.3d 199, 204 (2d Cir. 2009) (citing Celotex Corp., 477 U.S. at 322-23). The burden then shifts to the party opposing summary judgment. In evaluating the record to determine whether there is a genuine issue as to any material fact, [t[he evidence of the non-movant is to be believed, and all justifiable references are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S 242 at 255, 106 S. Ct. 2505 (1986).

However, to defeat a summary judgment motion, the non-moving party may not rely on unsupported assertions, conjecture or surmise. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). A summary judgment motion cannot be defeated on the basis of mere denials or unsupported alternative explanations of facts. Senno v. Elmsford Union Free School Dist., 812 F. Supp 2d 454, 467 (S.D.N.Y. 2011). Rather, the non-moving party must "cit[e] to particular parts of materials in the record" to show that " fact . . . is generally disputed," Fed. R. Civ. P. 56(c); see, e.g. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct., 1348 at 1356 (1985), and "must set forth significant, probative evidence on which a reasonable fact-finder could decide in [her] favor. Senno, 812 F. Supp. 2d at 467-68 (citing Anderson v. Liberty Lobby Inc, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex Corp., 477 U.S. at 322). With these standards in mind, there is no genuine dispute that the Transfers constitute avoidable preferences for which the Trustee is entitled to recovery.

## II.    THE TRUSTEE IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON HIS FIRST CLAIM FOR RELIEF FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS AS A MATTER OF LAW

Based upon the lack of any material disputed fact and the applicable law, the Trustee is entitled to summary judgment on his first claim for relief in the Complaint for avoidance and recovery of preferential and subsequent transfers as a matter of law.  In particular, discovery in this matter has resulted in an unusually strong documentary record in support of the Trustee's claims.

### A.    The Plaintiff's Prima Facie Case is Satisfied Under Bankruptcy Code Section 547

Sections 547 (b) of the Bankruptcy Code sets out five elements that must be established in order to avoid pre-petition transfers.  Specifically, section 547 (b) provides that to be voidable by a trustee, a transfer of an interest of a debtor in its property must be: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.]; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].

11 U.S.C. § 547(b).

Under Section 547(g), the trustee bears the burden of proving each of these claims.  See Cassirer v. Herskowitz (In re Schick), 234 B.R. 337 (Bankr. S.D.N.Y. 1999)(citing  11 U.S.C. § 547(g)); In re G. Survivor Corp., 217 B.R. 433 (Bankr. S.D.N.Y. 1998).  Bankruptcy Code

Section 550(a) in turn provides that once a transfer is proven avoidable under § 547 (b), "the

trustee [in bankruptcy] may recover [such funds] from (1) the initial transferee of such transfer or

the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee

of such initial transferee." Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re

Warnaco Group, Inc.), 2006 U.S. Dist. LEXIS 4263, 17-18 (S.D.N.Y. 2006)(citing 11 U.S.C. §

550(a); see also In re G Survivor Corp. 217 B.R. at 440. Bankruptcy Code Section 551provides

that avoided and recovered transfers shall be preserved for the estate. In this case, the Trustee

has satisfied its burden under each of the elements of section 547(b) as a matter of law.

### (1)    The Transfers Constitute an Interest of the Debtor in Property

There is no question of material fact that the funds were transferred, and that they were

the property of the Debtor. Discovery in this matter has produced an exceedingly clear paper trail

establishing without question that these funds were an interest of the Debtor in property, and that

they were transferred to Defendant Ratiba Salim.

Pursuant to § 101 of the Bankruptcy Code, a transfer is defined as every mode, direct or

indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with

property or with an interest in property, including retention of title as a security interest and

foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101.

First, there is no dispute that the Defendant Ratiba Salim received the Transfers.

Defendant Ratiba Salim's Queens County Savings Bank Account very clearly reflects on its face

the receipt of both a wire transfer and a cashier's check to a bank account in Defendant Ratiba

Salim's name. See Rule 7056-1 Statement at ¶¶ 5-9; Nisselson Aff. at ¶¶ 26-42; see also Exhibit

M. Moreover, the record overwhelmingly indicated that the funds were later received and

utilized by Defendant Ratiba Salim to satisfy a mortgage.

While the Bankruptcy Code does not define "an interest of the debtor in property," the United States Supreme Court in <u>Begier v. IRS</u>, 496 U.S. 53, 59 (1990) observed that "[b]ecause the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate -- the property available for distribution to creditors – 'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." <u>Begier</u>, 496 U.S. at 59.

There, the Supreme Court looked to Bankruptcy Code section 541(a)(1) for guidance. Bankuptcy Code section 541(1) states in pertinent part that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," which the Begier Court characterized as "the postpetition analog to § 547(b)'s 'property of the debtor.'" <u>Begier</u>, 496 U.S at 59; <u>see als</u>o <u>McHale v. Boulder Capital LLC</u> (In re 1031 Tax Group, LLC), 439 B.R. 47, 71 (Bankr. S.D.N.Y. 2010) ("The Bankruptcy Code provides an expansive view of an estate's property.  Estate property consists of "all legal or equitable interest of the debtor in property as of the commencement of the case.") (<u>citing</u> 11 U.S.C. § 541).  "Thus, the trustee may only seek to reach those legal or equitable interests that the debtor would have held at the time of the petition but for the debtor's transfer of those interests." <u>Glinka v. Bank of Vermont (In re Kelton Motors)</u>, 97 F.3d 22, 25 (2d Cir. 1996).

The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law.  See <u>Shron v. M & G Promo Service, Ltd. (In re Anthony Sicari, Inc.)</u>, 144 B.R. 656, 659 (Bankr. S.D.N.Y. 1992)(<u>citing</u> <u>Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.)</u>, 928 F.2d 565, 569 (2d Cir. 1991).

"[T]he primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment."  In re Southmark Corp v. Grosz (In re Southmark Corp.)., 49 F.3d 1111, 1116-1117 (5th Cir., 1995).

Thus, funds transferred from an unrestricted bank account belonging to a debtor have been held to constitute an interest of the debtor in property.  See McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC), 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010); see also Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.), 100 F.3d 53, 55 (7th Cir. 1996) ("Property of the debtor . . . includes the interest that a depositor has in the money in his account, more precisely the money owed him by the bank by virtue of the account."); In re Southmark Corp., 49 F.3d at 1116-1117 (payment to employee from debtor's checking account, which contained "commingled funds" as part of a cash a management system, when debtor held "complete legal title, all indicia of ownership, and unfettered discretion to pay creditors of its own choosing, including its own creditors," held to be preferential because debtor's estate was diminished and because debtor controlled fund in account).

Here, it is undisputed that the accounts from which the Transfers originated belonged to the Debtor.  See Rule 7056-1 Statement at ¶¶ 5-9; Nisselson Aff at ¶¶ 27-42.  The Defendants have produced, and the Trustee has provided in connection with this motion, bank account statements that further establish this fact:  Nisselson Aff., Exhibits J and K.  The $495,000 wire transfer was in fact transferred between two accounts belonging to the Debtor, before being deposited with the Defendant Ratiba Salim.  Each bank record very clearly indicates on its face that the "account owner" is "Big Apple Volkswagen, LLC."  See Nisselson Aff., Exhibits J and K.  Moreover, the Transfers were made by Julian Salim, the Managing Member and 54% equity

owner of the Debtor.  In fact, no party has disputed that the funds in question belonged to the

Debtor

### (2)      The Transfers were to or for the Benefit of a Creditor

The Transfers to Defendant Ratiba Salim constitute transfers to or for the benefit of a

creditor.  Section 101(10) of the Bankruptcy Code defines a "creditor," in part, as an "entity that

has a claim against the debtor that arose at the time of or before the order for relief concerning

the debtor."  In re Idicula, 484 B.R. 284 (Bankr. S.D.N.Y. 2013) (citing 11 U.S.C. § 101(10)(A)).

A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or

unsecured."  In re Idicula, 484 B.T. 284 (citing § 101(5)(A)).  The U.S. Supreme Court has stated

that "claim" is intended to have "the broadest available definition,"  FCC v. NextWave Pers.

Comm'cns Inc., 537 U.S. 293, 302 (2003).  It is widely accepted that Congress contemplated that

"'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt

with in the bankruptcy'" to permit the "'broadest possible relief in bankruptcy court.'"  Grady v.

A.H. Robins Co., Inc., 839 F.2d 198, 200 (4th Cir. 1988) (internal citations omitted)

Assuming all inferences in favor of the Defendants, the evidence establishes that

defendant Ratiba Salim was a creditor of the Debtor as a matter of law.  Taken on its face, The

Letter Agreement represents a contractual relationship between the Debtor and Ratiba Salim

memorializing the Debtor's promise to repay Defendant Ratiba Salim for her loan of $300,000 in

connection with the purchase of the franchise.  See Nisselson Aff. at¶ 43-55 and Ex. R.

Moreover, by Defendant's own admissions in this matter, the transfers identified were made to

her as a creditor and in payment of an antecedent debt.  See Rule 7056-1 Statement at ¶¶ 10-11.

Moreover, the Debtor has conceded as much, as the Debtor's Schedules list Defendant Ratiba

Salim as a creditor.  See Nisselson Aff., Ex. I at 2 (Debtor's Statement of Financial Affairs

identifying the payment to Defendant Ratiba Salim under "Payments to Creditors.")  The

Transfers were therefore to or for the benefit a creditor, and the Trustee has met his burden with

respect to Section 547(b)(1).

      (3)      **The Transfers Were Made On Account of An Antecedent Debt Owed By the
Debtor Before Such Transfer Was Made**

     It is undisputed that the Transfers were made on account of an antecedent debt owed by

the Debtor to Ratiba Salim prior to the time that the Transfers were made.  See Nisselson Aff.,

Ex. R (establishing that loan originated from 2006 agreement).  All relevant parties have verified

their signatures upon such agreement.  See Nisselson Aff., Exs. N and Q.  Cases generally hold

that a debt is antecedent for the purposes of Bankruptcy Code § 547(b)(2) if it was incurred prior

to the alleged transfer.  See Pereira v. Lehigh Savings Bank, SLA, (In re Artha Management,

Inc., 174 B.R. 671, 678 (Bankr. S.D.N.Y. 1994); see also Fonda Group v. Marcus Travel (In re

Fonda Group), 108 B.R. 956, 959 (Bankr. D.N.J. 1989)("Although the term 'antecedent debt' is

not defined by the Code, a debt is 'antecedent' when the debtor becomes legally bound to pay

before the transfer is made.")  Moreover, "[a] debt is incurred, for purposes of 11 U.S.C. §

547(b)(2), when it arises and not when payment becomes due.  In re Schick, 234 B.R. at 347.

     Based on the foregoing, the Debtor's legal obligation to repay Defendant Ratiba Salim in

the future arose when the parties signed the Letter Agreement in or about June 2006, prior to the

transfers.  See In re Schick, 234 B.R. at 347.  Courts have further held that "[a] common sense

approach for determining whether a loan repayment is 'for or on account of [a] . . . debt owed by

the debtor' is to consider whether the creditor would be able to assert a claim against the estate,

absent the repayment.  In re Virginia-Carolina Financial Corp., 954 F.2d 193, 197 (4th Cir.

1992).  In that case, the Court further noted that under the bankruptcy code, "debt means liability

on a claim" and "the term 'claim' is defined in the broadest possible language, including: (A)

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured,

unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives

rise to a right to payment . . . ."  See In re Virginia –Carolina Financial Corp., 954 F.2d at 197

(citing 11 U.S.C. § 101(5).  As in In re Virginia, it is difficult to argue that Defendant Ratiba

Salim would not, absent the Transfers, have had a claim against the bankruptcy estate for the

moneys loaned prior to the date of the Transfers.   Therefore, the transfers were clearly on

account of antecedent debts.

### (4)      Made while Debtor Was Insolvent

An avoidable transfer also requires that the transfer be "made while the debtor is

insolvent . . . "  11 U.S.C. § 547 (b)(3).  For the purpose of preferential transfers, it is presumed

that the debtor is insolvent for the 90-day period before the date of filing. 11 U.S.C. § 547 (f).  A

creditor may rebut the presumption of insolvency by producing some evidence suggesting the

debtor was solvent or by pointing to schedules and statements tending to show solvency.  See

e.g., Horowitz v. Rote (In re Moorhouse), 2013 U.S. Dist. LEXIS 179358 (W.D.N.Y. Dec. 20,

2013)

Here, Defendants have not, and cannot, dispute that the Transfers occurred within a mere

two weeks before the Petition and well within the 90-day period before the date of filing.  Nor

have Defendants offered any evidence to rebut the presumption.  Thus, the Trustee has met his

initial burden with respect to this prong of the statute.

### (5)      The Transfers Were Made During the Preference Period

Pursuant to § 547(b)(4)(A), all transfers by the debtor within 90 days of the filing of the

petition are subject to preference scrutiny.   As set forth above, the Transfers were made during

the preference period.

### (6)      The Transfers Enabled Defendant Ratiba Salim to Receive More Than She Would Have Received Through a Hypothetical Chapter 7 Liquidation

Finally, the evidence establishes that, in receiving the full amount of the Transfers,

Defendant Ratiba Salim received more than she would have received in this chapter 7 proceeding

if (A) the Transfers had not been made; and (B) Defendant Ratiba Salim received payment of her

debt to the extent provided by the provisions of 11 USCS §§ 101 et seq.   "To satisfy § 547(b)(5),

the plaintiff must prove that the transferee received more as a result of the preference than if the

preference was never paid, and instead, the transferee received a distribution on its claim in a

hypothetical chapter 7 case."   Savage & Assocs. v. Mandl (In re Teligent Inc.), 380 B.R. 324,

339 (Bankr. S.D.N.Y. 2008)(internal citations omitted).   "The proponent must construct a

hypothetical chapter 7 case, and determine the percentage distribution that the defendant would

have received on the petition date."   Id.   As a practical matter, this element is satisfied whenever

the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7

distribution.   Id.

Here, VCI Credit, Inc., the Debtor's secured creditor, holds a first priority lien against

essentially all of the Debtor's assets.   See Nisselson Aff. at ¶¶ 61-66.   Accordingly, the Trustee

has stated that unsecured creditors are not expected to receive a 100% dividend in the Debtor's

case, because, after administrative expenses, the balance of the estate remains subject to the

secured claim of VCI.  Id.  at ¶ 66.  The amount currently owed to VCI is $1,146,506.96.

"Under § 547(b)(5), a transfer to a fully secured creditor is immunized from preference attack because the creditor would have been paid in full in a hypothetical Chapter 7 liquidation by virtue of its realization on its collateral." Gallagher v. Gordon, 2010 U.S. Dist. LEXIS 43260 (W.D.N.Y. May 3, 2010). In that regard, Defendants have alleged that Defendant Ratiba Salim is a secured creditor. Defendants have produced, in connection with discovery in this matter and in connection with their response to the Trustee's Motion to Dismiss Defendant's Counterclaim, a copy of New York UCC-1 Filing Statement (Form UCC-1), See Nisselson Aff., Ex T. Notably, the New York UCC-1 Filing statement shows an Initial Filing Date of January 28, 2008, nearly two years after the alleged loan.

Despite Defendants' contentions, such New York UCC-1 Statement is ineffective to establish the purported secured creditor status of Defendant Ratiba Salim. "The purpose of filing a financing statement is 'to put third parties on notice that the secured party who has filed it *may* have a perfected security interest in the collateral described.'" Ultimore, Inc. v. Bucala (In re Bucala), 464 B.R. 626, 632 (Bankr. S.D.N.Y. 2012)(internal citations omitted)(emphasis added); see also In re Modafferi, 45 B.R. 370, 372 (Bankr. S.D.N.Y. 1985)(noting that " a standard form financing statement, standing alone, does not constitute a security agreement."). Rather, "[a]ccording to N.Y. U.C.C. section 9-203(b)(3)(A), a security interest first attaches to collateral and is enforceable only if the debtor has authenticated a security agreement that provides a description of the collateral." In re Bucala, 464 B.R. at 629-630 (internal quotations omitted). "A '[s]ecurity agreement' is 'an agreement that creates or provides for a security interest.'" In re Bucala, 464 B.R. at 629 (citing N.Y. U.C.C. Law § 9-102(a)(73)).

For there to be a valid and enforceable security agreement, a formal and separately signed document labeled "security agreement" is not necessary. In re Modafferi, 45 B.R. at 372.

Rather courts have read several documents together and looked at the surrounding circumstances to find the existence of security agreements. <u>In re Bucala,</u> 464 B.R. at 629. Almost any combination of documents can be used to prove the existence of a security agreement so long as the documents embody the intention of the parties to create a security interest. <u>Id</u>.

In this case, Defendants have produced solely a financing statement, which, as set forth above, is ineffective. It is undisputed that the Letter Agreement does not on its face grant or purport to grant Defendant Ratiba Salim a security interest in any of the Debtor's property. <u>See</u> Nisselson Aff., Ex. R. Notably, the Debtor failed to identify Defendant Ratiba Salim as a secured creditor in its Schedules. <u>See</u> Nisselson Aff., Exhibit A at Schedule D. Moreover, even if it were effective, VCI's first filed priority, filed more than two years before that alleged by Ratiba Salim, would have priority. <u>See</u> Nisselson Aff., Exhibit T.

Having met the five requirements of Bankruptcy Code § 547 (b), the Trustee has made a prima facie showing that the Transfers to Defendant Ratiba Salim were preferential and should be avoided.

## IV.   TO THE EXTENT THAT THE TRANSFERS TO DEFENDANT RATIBA SALIM ARE AVOIDED, THE SUBSEQUENT TRANSFER TO DEFENDANT WAHID SALIM IS ALSO RECOVERABLE BY THE TRUSTEE PURSUANT TO 11 U.S.C. § 550(a)

[T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

Under the avoidance and recovery scheme enacted by Congress, it is the initial transfers made by a debtor of its property that are avoided.  After establishing the initial transfer is avoidable, a trustee may recover from the initial transferee, or any subsequent transferee in the chain, subject to the defenses available to them[1].

To prove that a defendant qualifies as a subsequent transferee pursuant to Bankruptcy Code § 550(a)(2), the trustee must establish that the defendant (1) received property of the estate, and (2) received such property either directly from the initial transferee or from a later transferee. 5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a],[c]; In re Knippen, 355 B.R. 710, 728 (Bankr. N.D. Ill. 2006) ("Under § 550(a)(2), an immediate or mediate transferee is 'one who takes in a later transfer down the chain of title or possession.'") (citing First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 974 F.2d 712, 722 (6th Cir.1992)).

To prove that a defendant received property of the estate, so as to qualify as a subsequent transferee pursuant to Section 550(a)(2), the trustee must establish that the funds at issue originated with the debtor.  In re Allou Distributors, Inc., 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007) ("[I]n order to prove a Section 550(a)(2) claim, a plaintiff must carry its burden to establish that the funds at issue are property of the estate . . . ."); IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 708 (11th Cir. 2005) ("In an action seeking recovery [pursuant to § 550(a)(2)], the plaintiff has the burden of tracing funds it claims to be property of the estate . . . ."); In re G-I Holdings, Inc., 338 B.R. 232, 253 (Bankr. D.N.J. 2006) (Section 550(a)(2) permits

---

[1] See 11 U.S.C. § 544 ("The Trustee … may avoid any transfer of property of the debtor …"); § 545 ("The Trustee … may avoid the fixing of a statutory lien on property of the debtor …"); § 547 ("The Trustee may avoid any transfer of an interest of the debtor in property …"); § 548 ("The Trustee may avoid any transfer…of an interest of the debtor in property …").

plaintiff to pursue subsequent transferee "so long as the chain of possession can be established.")
(citation omitted).

However, under certain circumstances, the trustee can satisfy this burden without
precisely accounting for the exact funds at issue.  Allou, 379 B.R. at 30 ("[T]his burden is not so
onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue.'"); IBT Int'l,
408 F.3d at 708 ("[P]roper tracing does not require dollar-for-dollar accounting.")  Likewise,
dollar-for-dollar tracing is not required at the pleading stage, at least pre-*Iqbal*.  Allou, 379 B.R.
at 30.  Courts tend to relax the trustee's tracing burden when the number and complexity of the
transactions at issue are high.  See Allou, 379 B.R. 5 (several transfers between closely-held
entities); IBT Int'l, 408 F.3d at 708 ("Givens and Tedders [transferees] perpetrated a fraud that
can only be described as massive.  It is not fatal to the Trustee's case that dollar for dollar, the
exact funds cannot be traced.").

In this circumstance, it is sufficient if the trustee "identifie[s] the relevant pathways"
through which the funds at issue flowed.  IBT Int'l, 408 F.3d at 708–09 (trustee's showing,
without precise tracing, that debtor's funds eventually found their way to the defendants was
sufficient to affirm on clear error standard bankruptcy court's finding that trustee had satisfied its
tracing burden).

Due to the unusually strong documentary path in the instant case, the Trustee can meet
this burden.  As established by the record, Ratiba Salim received both a wire transfer and a
cashier's check totaling more than $700,000 from bank accounts clearly listing the Debtor as the
account owner.  Notably, the beginning balance of Ratiba Salim's Queens County Savings Bank
account prior to receipt of the funds was $1,183.78.  See Nisselson Aff., Ex. M, so that it is clear
that the Debtor's funds were what allowed her to make a substantial mortgage payment, not her

own available funds.  Within less than a week of receiving the Transfers in question, that same

bank account reflects Ratiba Salim's satisfaction of a mortgage in the amount of approximately

$335, 160.00.  See Nisselson  Aff., Ex. M.  The mortgage was clearly satisfied with the Debtor's

funds.  A little over a month later, Defendant Ratiba Salim transferred this same property to her

husband, Wahid Salim.

A defense will arise under 11 U.S.C. § 550(a)(2) if (1) a transferee takes for value,

including satisfaction or securing of a present or antecedent debt, in good faith and without

voidability of the [initial] transfer avoided,.  Here, Although the Deed recites that the Defendant

Wahid Salim provided ten dollars in consideration for the transfer, no substantiation of the

consideration exchanged has been provided to the Trustee, despite Plaintiff's document request

seeking "[a]ll Dcuments concerning the transfer of title to the real property located at 8529 65th

Road, Rego Park, New York 11374 from Defendant Ratiba Salim to Defendant Wahid Saleem."

See Nisselson Aff. at ¶ 71; see also Nisselson Aff., Exs. Y and W.

Moreover, Defendant Wahid Salim should be deemed to have knowledge of the

avoidance of the transfer, given that two days prior to the Subsequent Transfer, on May 3, 2011,

Julian Salim attended the Hearing on the Motion to Appoint a Chapter 11 Trustee at which the

Court ordered the appointment of a Chapter 11 Trustee based on Julian Salim's "clearly

inappropriate transactions" and the Debtor's counsel openly contemplated whether the pre-

petition transfers made by Mr. Salim were preferential or fraudulent.  See Nisselson Aff,.,

Exhibit H at pp. 20, 26.

## V.       Conclusion

For the reasons set forth above, the Plaintiff respectfully request that the Court (1)

determine that the transfers to Defendant Ratiba Salim were preferential as a matter of law; (2)

avoid and preserve the transfers to Defendant Ratiba Salim; (3) direct that such transfers be set

aside and allow the Trustee to recover the transfers, or the value thereof, from Defendant Ratiba

Salim for the benefit of the Debtor's estate; and (4) avoid and recover the subsequent transfer to

Defendant Wahid Saleem as a subsequent transferee of a property transferred to him by

Defendant Ratiba Salim; and (5) grant such other and further relief as is just and proper,

including, but not limited to prejudgment interest on the amount of the Transfers and reasonable

attorneys fees

Dated:  New York, New York
         January 27, 2014

                            WINDELS MARX LANE & MITTENDORF, LLP
                            *Attorneys for Alan Nisselson, Trustee, Plaintiff*

               By:     /s/ Alan Nisselson
                       Alan Nisselson (anisselson@windelsmarx.com)
                       Serena M. Parker (sparker@windelsmarx.com)
                       156 West 56th Street
                       New York, New York 10019
                       Telephone:     (212) 237-1000
                       Facsimile:     (212) 262-1215