UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# Minutes of Proceedings

_____

Date:    March 11, 2014

----------------------------------------------------------------X

In re:                                                                                        Chapter 7

BIG APPLE VOLKSWAGEN, LLC,                                      Case No. 11-11388 (RG)


                                    Debtor.
----------------------------------------------------------------X

ALAN NISSELSON, Chapter 7 Trustee of,

BIG APPLE VOLKSWAGEN, LLC,


                     Plaintiff,

        v.                                                                                   Adv. Proc. No. 11-02251 (RG)


RATIBA SALIM and WAHID SALEEM,


                    Defendants.
----------------------------------------------------------------X


Present:      Hon. Robert E. Grossman        ECRO
              Bankruptcy Judge               Court Reporter


Proceedings:

   ☒ Trustee's Motion for Partial Summary Judgment


Orders:       ☒ Relief sought in the Motion:
                ¤ Denied    ☒ Granted    ¤ Dismissed       ¤ Awarded by Default
              ¤ Matter taken under advisement
              ¤ Formal order or Judgment to enter

¤ Confirmation/modification of plan    ¤ granted    ¤ denied

☒ As per the record of the hearing held on March 11, 2014, the Motion is hereby GRANTED.  Attached hereto is a Memorandum Decision granting Trustee's Motion for Partial Summary Judgment.   It So Ordered.

---

BY THE COURT                                              FOR THE COURT:  Vito Genna, Clerk

/s/ Robert E. Grossman_____          March 12, 2014         By: /s/ Lynda Calderon
United States Bankruptcy Judge           Date                           Deputy Clerk

## MEMORANDUM DECISION

**Introduction**

Before the court is Plaintiff Alan Nisselson's Motion for Partial Summary Judgment. Nisselson (the "Trustee") is the chapter 7 trustee for the estate of Big Apple Volkswagen, LLC ("Big Apple" or the "Debtor"). The Trustee seeks partial summary judgment as to his June 14, 2011 complaint (the "Adversary Complaint") for avoidance and recovery of preferential and subsequent transfers of estate property. Specifically, the Trustee seeks to avoid and recover (i) certain funds diverted from the Big Apple estate by Julian Salim, the former managing member and majority owner of Big Apple, and transferred to Defendant Ratiba Salim, Julian Salim's mother, and (ii) the subsequent transfer by Ratiba Salim to Defendant Wahid Saleem, Julian Salim's father, of a property freed from a mortgage utilizing Big Apple funds and not received by Wahid Saleem in good faith. (The Court notes that Julian Salim and Ratiba Salim spell their last name differently than Wahid Saleem. There is no evidence, and Defendants have not asserted, that the relationship between and among Julian Salim and the Defendants is other than as asserted by the Trustee.)

Defendants have posed no opposition to the motion, but appeared at a hearing held on this matter on March 11, 2014 to voice limited opposition to the wording of any proposed order.

**Factual Background**

The factual background of this matter is supported by both (i) the Affidavit of Alan Nisselson in Support of Plaintiff's Motion for Partial Summary Judgment, sworn to on January 24, 2014 and docketed at ECF No. 39 (the "Nisselson Aff."); and (ii) the Plaintiff's Local Bankruptcy Rule 7056-1 Statement of Material and Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment, docketed at ECF No. 40.

The Debtor owned and operated a Volkswagen dealership and repair business pursuant to a franchise agreement with Volkswagen of America, Inc. Julian Salim was the managing member and 54% equity owner of the Debtor.

The Debtor filed a voluntary petition for relief under chapter 11 on March 30, 2011 (the "Commencement Date"). On motion of secured creditor VW Credit, Inc., by order dated May 11, 2011, the Court directed the appointment of a chapter 11 trustee. By order dated May 12, 2011, the Court approved the appointment of Nisselson as trustee for the chapter 11 estate. Upon the motion of Nisselson as chapter 11 trustee and by order dated December 21, 2011, the Court converted the Debtor's case to a case under chapter 7 of the bankruptcy code.

On June 14, 2011, the Trustee brought this adversary proceeding under (i) 11 U.S.C. §§ 544(b), 547(b), 548(a), 550(a) and 551; and (ii) the New York Debtor and Creditor

Law §§ 274, 278 and/or 279.  The Trustee, via the Adversary Complaint, seeks to avoid and recover (i) as fraudulent and preferential, the prepetition transfer by Julian Salim of at least $718,000 from the Debtor's estate to Ratiba Salim, and (ii) her subsequent transfer to Wahid Saleem of her primary residence at 8529 65th Road, Rego Park, NY 11374 (the "Premises"), which was freed of a mortgage through the use of the Debtor's funds.  Ratiba Salim is the mother of Julian Salim.  Wahid Saleem is the father of Julian Salim and the husband of Ratiba Salim.

The trustee separately moved for, and the Court issued (i) an *ex parte* order of attachment against the Premises pending judgment or other disposition of the adversary proceeding, and (ii) an order confirming the order of attachment.  The Adversary Complaint further alleges that on March 15, 2011, Julian Salim transferred $504,271.14 from Big Apple's bank account to his brother-in-law in Syria.  This additional transfer is not at issue in the adversary proceeding and, therefore, is not addressed in this ruling.

Debtor's account statement from Wachovia shows a "Counter Withdrawal" from Debtor's Wachovia Commercial Checking Funding Account dated March 14, 2011.  Also on March 14, 2011, a $718,000 "Counter Deposit" was made to the Debtor's Wachovia Commercial Checking – Wholesale "Slush" Account.  On or about March 16, 2011, Julian Salim requested that a wire transfer in the amount of $495,000 be made from the Debtor's Slush Account to Ratiba Salim's Queens County Savings Bank account.  On the same day, Ratiba Salim's Queens County Savings Bank Account Statement reflects a Fedwire credit in the amount of $495,000 showing the originator of the funds as Big Apple Volkswagen.

Also on or about March 16, 2011, the Debtor's Slush Account reflects a "Counter Withdrawal" of $210,000.  A withdrawal slip obtained from Wells Fargo Bank by the Trustee indicates that on March 16, 2011, a withdrawal of $210,000 was made by Julian Salim.  A cashier's check dated March 16, 2011 in the amount of $210,000 drawn on Big Apple's Slush Account was deposited into Ratiba Salim's Queens County Savings Bank account.

At a hearing held in connection with the motion of VW Credit, Inc. to appoint a chapter 11 trustee, the Debtor, appearing through counsel, stated that "the facts of the payment to Mrs. Salim … are not controverted."  Nisselson Aff. Ex. H (05/03/11 Tr.) at 15:9-10 (Snyder).  The Debtor described the transfer of $718,000 as having been made by Julian Salim to Ratiba Salim in satisfaction of an alleged loan made by Ratiba Salim to Big Apple.  The Debtor further acknowledged that a transfer of $781,000 listed under "Payment to Creditors" in the Debtor's Statement of Financial Affairs referred to the same payment.  See Nisselson Aff. Ex. H at 7:1-10 (Deily), 15:9-10 (Snyder); Nisselson Aff. Ex. I at 2.

Pursuant to a Letter Agreement between Big Apple VW, LLC, Julian Salim and Ratiba Salim effective June 1, 2006, "Julian Salim and Big Apple Volkswagen borrowed a total sum of $300,000 to invest in purchasing Big Apple VW, LLC."  Nisselson Aff. Ex. R.  Each of Julian Salim and Ratiba Salim has verified his/her

2

signature to the Letter Agreement.  Nisselson Aff. Ex. N; Nisselson Aff. Ex. Q.  The Letter Agreement does not grant, or purport to grant, Ratiba Salim a security interest in any of the Debtor's property, nor is Ratiba Salim identified as a secured creditor in Debtor's schedules.  See id.; Nisselson Aff. Ex. A, Schedule D.  The Letter Agreement provided that Julian Salim and the Debtor would pay Ratiba Salim the sum of $75,000 annually on each of five agreed dates through March 1, 2011 as a promised share of profits "for giving Julian Salim and Big Apple VW the loan."  Nisselson Aff. Ex. R.  The Letter Agreement further provided that the annual profit payments were not intended to include the $300,000 principal amount due under the loan, which would be repaid in full on or before April 1, 2011.  Id.

Julian Salim confirmed that no annual profit payment ever was made to Ratiba Salim.  Nisselson Aff. Ex. N. (Julian Salim Deposition Tr.) at 34:3-12.  Julian Salim further testified that the payments to Ratiba Salim were made in March 2011 because "it was approaching the five-year agreement that we had with her."  Id. at 96:8-13.

Ratiba Salim admitted that she took out a mortgage on the Premises in order to facilitate a loan to Julian Salim.  Nisselson Aff. Ex. Q (Ratiba Salim Deposition Tr.) at 16:4-20:22.  On March 23, 2011, Ratiba Salim satisfied a $300,000 mortgage on the Premises.  Nisselson Aff. Ex. V.  Julian Salim confirmed that the money that was used to satisfy the mortgage on the Premises was the money that Ratiba Salim received from Big Apple Volkswagen.  Nisselson Aff. Ex. N. at 75:14-22.

On May 5, 2011, Ratiba Salim transferred title to the Premises to Wahid Saleem, allegedly in exchange for $10 of consideration.  Nisselson Aff. Ex. W.  Two days prior to the transfer, on May 3, 2011, Julian Salim attended the hearing on the motion of VW Credit, Inc. to appoint a chapter 11 trustee at which the Court noted Julian Salim's "clearly inappropriate transactions" and Debtor's counsel openly contemplated whether the prepetition transfers by Julian Salim were preferential or fraudulent.  Nisselson Aff. Ex. H at 20:2-5 (Snyder), 26:7 (Peck).  Although the deed evidencing the transfer recites that Wahid Saleem provided $10 in consideration for the transfer, no party has provided substantiation of any consideration to the Trustee.  Wahid Saleem testified that Defendants had a long-term plan to transfer the Premises to him, but were prevented from doing so until the mortgage in Ratiba Salim's name was satisfied.  Nisselson Aff. Ex. X (Wahid Salim Deposition Tr.) at 23:2-21.

**Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," and the moving party is entitled to "judgment as a matter of law."  Fed. R. Civ. P. 56(a); see NML Capital v. Republic of Argentina, 621 F.3d 230, 236 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Redd v. Wright, 597 F.3dd 532, 535-36 (2d Cir. 2010)).  The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party.  See NetJets Aviation, Inc. v. LHC Communs., LLC, 537 F.3d 168, 178 (2d Cir. 2008) (citing Liberty Lobby, 477 U.S. at 255; Coach Leatherware Co. v. AnnTaylor, Inc., 933

F.2d 162, 167 (2d Cir. 1991)). In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (quoting Liberty Lobby, 477 U.S. at 249 (internal quotation marks omitted)). Here, the Motion for Partial Summary Judgment presented by the Trustee easily satisfies this standard.

**Partial Summary Judgment**

Based upon the lack of any material disputed fact and the applicable law, the Trustee is entitled to summary judgment on his claims for avoidance and recovery of preferential and subsequent transfers as a matter of law. A preference action allows a trustee to recover "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Beiger v. IRS, 496 U.S. 53, 58 (1990). Under 11 U.S.C. 547(b), a trustee may avoid any transfer of an interest of a debtor in property

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made –

        (A) on or within the 90 days before the date of the filing of the petition …;

    (5) that enables such creditor to receive more than such creditor would receive if –

        (A) the case were a case under chapter 7 [of title 11 of the United States Code];

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

11 U.S.C. § 547(b).

Under 11 U.S.C. § 547(g), the trustee bears the burden of proving the avoidability of a transfer. 11 U.S.C. § 547(g). The Court finds that the Trustee has satisfied his burden as to each element of section 547(b).

*The Transfer of an Interest of the Debtor in Property*

Estate property consists of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. Consistent with this view,

4

"money in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate."  McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC), 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010) (citation omitted).  It is undisputed that the accounts from which the transfer of funds to Ratiba Salim originated belonged to the Debtor.  Each bank record evidencing the origination of funds clearly indicates on its face that the "account owner" is "Big Apple Volkswagen, LLC."  Moreover, there is no dispute that Ratiba Salim received the transfers at issue.  Ratiba Salim's Queens County Savings Bank account reflects on its face the receipt of both a wire transfer and a cashier's check.  The record further evidences the fact that Ratiba Salim later used the funds received to satisfy a mortgage.  Therefore, the transfers at issue constitute the transfer of an interest of the Debtor in estate property.

### *To or For the Benefit of a Creditor*

Under 11 U.S.C. § 101(10), a "creditor" is defined, in part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured."  11 U.S.C. § 101(5)(A).  Viewing the facts in the light most favorable to the Defendants, Ratiba Salim clearly was a creditor of the Debtor.  The Letter Agreement represents a contractual relationship between the Debtor and Ratiba Salim setting forth the Debtor's promise to repay a loan in the amount of $300,000.  Ratiba Salim admits, via confirmation of her signature on the Letter Agreement and statements at her deposition that she took out a mortgage to facilitate a loan to Julian Salim, that the transfers identified were made to her as a creditor and in payment of an antecedent debt.  In addition, the Debtor identifies Ratiba Salim on its schedules as a creditor. Accordingly, the Trustee has satisfied his burden with respect to 11 U.S.C. § 547(b)(1).

### *On Account of an Antecedent Debt Owed by the Debtor Before Such Transfer Was Made*

As a general matter, a debt is "antecedent" for purposes of § 547 when it was incurred prior to the alleged transfer.  5 Collier on Bankruptcy 15th Ed. ¶ 547.03 (citation omitted).  Here, Debtor's obligation to repay Ratiba Salim arose when the parties, all of whom have verified their signatures, signed the Letter Agreement in June 2006 – that is, prior to the transfers at issue.  The transfers that are subject of this adversary proceeding, then, were made on account of an antecedent debt, and the Trustee has satisfied his burden with respect to 11 U.S.C. § 547(b)(2).

### *Made While the Debtor Was Insolvent/Made on or Within the 90 Days Before the Date of the Filing of the Petition*

For the purposes of determining whether an alleged transfer was preferential, it is presumed that the debtor is insolvent for the 90-day period before the filing date.  11 U.S.C. § 547(f).  In this case, the transfers occurred within fourteen days of

5

the Commencement Date.  Moreover, the Defendants have not offered any evidence to rebut the presumption of insolvency.  The Trustee has satisfied his burden with respect to 11 U.S.C. §§ 547(b)(3) and (b)(4).

### *Enabled the Creditor to Receive More than She Would Have Received Through a Hypothetical Chapter 7 Liquidation*

"To satisfy § 547(b)(5), the plaintiff must prove that the transferee received more as a result of the preference than if the preference was never paid, and instead, the transferee received a distribution on its claim in a hypothetical chapter 7 case." Savage & Assocs. v. Mandl (In re Teligent Inc.), 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008).  "As a practical matter, this element is satisfied whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical distribution."  Id. (citations omitted).

In this matter, VCI Credit, Inc., the Debtor's secured creditor, holds a first priority lien against essentially all of the Debtor's assets.  The amount currently owed to VCI is in excess of $1.1 million.  Accordingly, the Trustee has determined that unsecured creditors are not expected to receive a 100% dividend in the Debtor's chapter 7 case.

Defendants have produced a copy of a New York UCC-1 Statement (i) naming Ratiba Salim as Secured Party, (ii) naming Big Apple Volkswagen, LLC as Debtor, and (iii) showing an Initial Filing Date of January 28, 2008 (nearly two years after the date of the alleged loan).  Nisselson Aff. Ex. T.  Viewing the facts in the light most favorable to Defendants, the Court finds that the UCC-1 Statement nevertheless is ineffective to establish the purported secured creditor status of Ratiba Salim.  "The purpose of filing a financing statement is to put third parties on notice that the secured party who has filed it *may have* a perfected security interest in the collateral described."  Ultimore, Inc. v. Bucala, 464 B.R. 626, 632 (Bankr. S.D.N.Y. 2012) (internal quotation marks and citations omitted) (emphasis added).  "According to [section 9-203(b)(3)(A) of the New York UCC], a security interest attaches to collateral and is enforceable only if the debtor has authenticated a security agreement that provides a description of the collateral."  Id. at 629-30 (internal quotation marks and citation omitted).  Here, Defendants have produced nothing in addition to the UCC-1 Statement to evidence Ratiba Salim's alleged status as a secured creditor.  Indeed, the Letter Agreement does not on its face purport to grant Ratiba Salim a security interest in any Debtor property and Defendants have not introduced any other document purporting to embody the intent of the parties to create a security interest.  Moreover, the Debtor failed to identify Ratiba Salim as a secured creditor in its schedules.  Accordingly, Ratiba Salim is an unsecured creditor whose claim against the Debtor, should it be allowed, will be entitled to less than a 100% distribution in the Debtor's chapter 7 case.

Given the foregoing, the Trustee has satisfied his burden with respect to 11 U.S.C. § 547(b)(5).

For the reasons stated, the Trustee has made a *prima facie* showing that the

transfers to Ratiba Salim were preferential and may be avoided.

***Subsequent Transfer to Wahid Salim Recoverable Under 11 U.S.C. § 550(a)***

Under section 550(a) of the Bankruptcy Code,

> [T]o the extent that a transfer is avoided under section … 547 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

In order to establish that a defendant qualifies as a subsequent transferee under § 550(a)(2), the trustee must establish that the defendant received property of the estate either directly from the initial transferee or from a later transferee.  5 Collier on Bankruptcy ¶ 550.02[4].  To show that a defendant "received property of the estate," a trustee must establish that the funds originated with the debtor.  In re Allou Distributors, Inc., 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007).  This burden, however, "is not so onerous as to require 'dollar-for-dollar accounting' of 'the exact funds' at issue."  Id. at 30 (citation omitted).  It is sufficient, rather, that the trustee identify "relevant pathways" through which the funds at issue flowed.  See IBT Int'l, Inc. v. Northern, 408 F.3d 689, 708-09 (11th Cir. 2005).

Given the documentary evidence presented here, the Trustee easily meets this burden.  It is clear that Debtor funds allowed Ratiba Salim to satisfy the mortgage on the Premises.  Less than two months after having satisfied the mortgage, Ratiba Salim transferred the Premises to her husband.

A defense will arise under 11 U.S.C. § 550(a)(2) if a transferee takes for value, in good faith, and without voidability of the transfer avoided.  Here, the deed includes a naked recitation that Wahid Salim provided $10 in consideration.  However, Defendants have provided no substantiation of the consideration allegedly exchanged.  Moreover, Wahid Salim may be deemed to have knowledge of the avoidance of the transfer, given that two days prior to the transfer of the Premises from Ratiba Salim to Wahid Saleem, Julian Salim, the son of Wahid Saleem and Ratiba Salim, attended the hearing on the motion of VW Credit, Inc. to appoint a chapter 11 trustee at which the Court noted Julian Salim's "clearly inappropriate transactions" and Debtor's counsel openly contemplated whether the prepetition transfers by Julian Salim were preferential or fraudulent.

Wahid Saleem is an immediate transferee of Ratiba Salim, the initial transferee, without defense under section 550(a)(2).  Accordingly, the Trustee is entitled to

recover the Debtor property transferred (that is, the funds transferred initially to Ratiba Salim to satisfy the mortgage on the Premises), or the value thereof, from Wahid Saleem.

**Conclusion**

For the reasons stated, the Court finds that no genuine dispute as to any material fact as to either (i) the transfer of funds from Big Apple to Ratiba Salim or (ii) the subsequent transfer of the Premises, the mortgage on which had been satisfied with Debtor funds, from Ratiba Salim to Wahid Saleem (and Wahid Saleem's resulting status as an immediate transferee of Ratiba Salim). The Court further finds that the Trustee is entitled to judgment as a matter of law. The prepetition transfers at issue from Big Apple to Ratiba Salim were preferential under 11 U.S.C. § 547. The Trustee is entitled to avoid and preserve such transfers to Ratiba Salim and shall be allowed to recover such transfers, or the value thereof, from Ratiba Salim for the benefit of the Debtor's estate. The Trustee also is entitled, under 11 U.S.C. § 550, to avoid and recover the subsequent transfer of Debtor funds – that is, the funds transferred initially to Ratiba Salim to satisfy the mortgage on the Premises – or the value thereof, by Ratiba Salim to Wahid Saleem. The Trustee is directed to submit an order consistent with this ruling, with leave granted to Defendants to submit a proposed counter-order.